Don NUCHOLLS and Lee Rhodes, d/b/a Zodiac Real Estate Company, Appellees,

v.

BOARD OF ADJUSTMENT OF the CITY OF TULSA, Oklahoma, and City of Tulsa, Oklahoma, a Municipal Corporation, Appellants.

No. 47854.

Supreme Court of Oklahoma.

Dec. 21, 1976.

As Corrected March 7, 1977.

Rehearing Denied March 9, 1977.

Louis Levy, Tom W. Tannehill, Tulsa, for appellees.

Waldo F. Bales, City Atty. by David L. Pauling, Russell R. Linker, II, Asst. City Attys., Tulsa, for appellants.

Epperson, Goodpaster & Johnsen by Roy D. Johnsen, Tulsa, for amicus curiae Municipal League of Oklahoma and Oklahoma Section of The American Institute of Planners.

Jacqueline S. Wright, Norman, for amicus curiae Oklahoma Association of Municipal Attys.

HODGES, Vice Chief Justice.

The question presented is the validity of a portion of the Tulsa, Okla.Rev.Ord., Title 42, Ch. 14, § 1470.1 (1969) [1] which prohibits the granting of a principal use variance.

Don Nucholls and Lee Rhodes, d/b/a Zodiac Real Estate Company, appellees, sought a variance authorizing the operation of a real estate office in a zoning district established exclusively for residential purposes. The Tulsa Board of Adjustment (Board) unanimously ruled it did not have jurisdiction under the ordinance to grant a principal use variance. Appellees appealed to the district court pursuant to the procedure delineated by 11 O.S.1971 § 401. Appellees also requested a declaratory judgment determining the constitutionality of a

---

1. Tulsa, Okla.Rev.Ord., Title 42, Ch. 14, § 1470.1 (1969) provides in pertinent part: " . . . The Board shall not permit by variance a principal use not otherwise permitted in the applicable district, it being the expressed spirit and intent of this Code that a change of the permitted uses shall be made by ordinance amendment of the Zoning Code or Official Zoning Map."

portion of the ordinance and an injunction against the Board and City of Tulsa (appellants) restraining them from enforcing the ordinance. The appeal from the Board of Adjustment was dismissed, but the district court granted appellees' motion for summary judgment on its petition for declaratory judgment. The court determined that a portion of § 1470.1 was unconstitutional, void, of no force and effect, and restrained and enjoined the Board of Adjustment of the City of Tulsa from enforcing the ordinance.

Appellants assert the provisions of the Oklahoma statutes, 11 O.S.1971 §§ 401–410 deny Boards of Adjustment jurisdiction to grant principal use variances, and that 11 O.S.1971 § 410 [2] specifically provides that the ordinance prohibiting the granting of principal use variances controls over 11 O.S. 1971 § 407 which empowers Boards of Adjustment to grant variances.

The Oklahoma statutes require the appointment of Boards of Adjustment and such boards are empowered to exercise jurisdiction in three general areas pursuant to 11 O.S.1971 § 407: building inspector appeals, permits for special exceptions, and to authorize variances.[3]

The salient question for our determination is whether the city ordinance prohibiting the granting of a principal use variance controls over the state statute empowering Boards of Adjustment to grant variances because of the language contained in 11 O.S.1971 § 410:

" . . . Wherever the provisions of any other statute or local ordinance or regulation require a greater width or size of yards, courts or other open spaces, or require a lower height of building or a less number of stories, or require a greater percentage of lot to be left unoccupied or impose other higher standards than are required by the regulations made under authority of this Act, the provisions of such statute, or local ordinance or regulation shall govern . . . "

■ Appellants argue that 11 O.S.1971 § 410 precludes granting of variances in Tulsa because the ordinance is more restrictive than the statute. The statute is subject to interpretation under the rule of "ejusdem generis." This statutory con-

---

**2.** 11 O.S.1971 § 410 provides:

Wherever the regulations made under authority of this Act require a greater width or size of yards, courts or other open spaces, or require a greater percentage of lot to be left unoccupied, or impose other higher standards than are required in any other statute or local ordinance or regulation, the provisions of the regulations made under authority of this Act shall govern. Wherever the provisions of any other statute or local ordinance or regulation require a greater width or size of yards, courts or other open spaces, or require a lower height of building or a less number of stories, or require a greater percentage of lot to be left unoccupied or impose other higher standards than are required by the regulations made under authority of this Act, the provisions of such statute, or local ordinance or regulation shall govern. In no event shall any provision of this Act apply to any property of any Railway Company or Terminal Company.

**3.** 11 O.S.1971 § 407 provides in pertinent part:

The Board of Adjustment shall have the following powers:

(1) To hear and decide appeals where it is alleged there is error in any order, requirement, decision or determination made by an administrative official in the enforcement of this Act or of any ordinance adopted pursuant thereto.

(2) To hear and decide special exceptions to the terms of the ordinance upon which such Board is required to pass under such ordinance.

(3) To authorize in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where owing to special conditions a literal enforcement of the provisions of the ordinance will result in unnecessary hardship and so that the spirit of the ordinance shall be observed and substantial justice done.

(4) Exceptions and/or variances may be allowed by the Board only after notice and hearing as hereinafter provided.

(5) A variance may be granted upon a finding by the Board of Adjustment that:

(a) The application of the ordinance to the particular piece of property would create an unnecessary hardship;

(b) Such conditions are peculiar to the particular piece of property involved; and

(c) Relief, if granted, would not cause substantial detriment to the public good, or impair the purposes and intent of the ordinance or the comprehensive plan.

struction provides where general words follow particular words, the general words will be considered as applicable only to things of the same general character, kind, nature or class enumerated, and cannot include wholly different things.[4]

We believe that the imposition of higher standards by city ordinance is restricted to greater width or size of yards, courts or other open spaces, height of buildings or number of stories, percentage of lot to be left unoccupied or similar matters of construction. The statute is not applicable to "use," rather it speaks to actual construction.

It is provided by 11 O.S.1971 § 401:

For the purpose of promoting health, safety, morals, or the general welfare of the community, the legislative body of cities and incorporated villages is hereby empowered to regulate and restrict the height, number of stories, and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, residence or other purposes.

Had it been the intent of the Legislature to permit restriction by city ordinance of "use," 11 O.S.1971 § 410 could have been amplified to include matters enumerated in 11 O.S.1971 § 401. After consideration of the Oklahoma Zoning Act we do not believe it was the legislative intent to permit cities by ordinance to restrict and disempower Boards of Adjustment rights to grant principal use variances under proper circumstances, that the pertinent portion of Tulsa, Okla.Rev.Ord., Title 42, Ch. 14, § 1470.1 (1969) is invalid because it is in conflict with the statute, 11 O.S.1971 § 407.

This court has recognized the authority of Boards of Adjustment to permit principal use variances,[5] and has determined that to limit Boards of Adjustment to only set-back building regulations would be an unduly restrictive interpretation of § 407. Property rights and the use of property are fundamental rights on which this country was established. It is apparent that the intent of the statutes is to give a property owner the opportunity to present his claim of hardship to the Board of Adjustment. In *Twist v. Kay*, 434 P.2d 180, 184–85 (Okl. 1967) the Court recognized that an aggrieved property owner may follow two separate methods to secure relief. He may either ask that the ordinance be struck down as being arbitrary, capricious or unreasonable, or he may ask for a variance to the ordinance where, if literally enforced would cause unnecessary hardship or create substantial harm or loss to him. In *Twist* the Court also determined that the jurisdiction of Boards of Adjustment is not confined to building and set-back regulations, and had the legislature intended to limit the Boards' jurisdiction it could have done so by using the word "only." The case expressly holds that the Board had the authority and jurisdiction to grant a principal use variance under proper and sufficient circumstances.

A variance is a right granted by a Board of Adjustment pursuant to power vested by statute or ordinance and is a form of administrative relief from the literal import and strict application of zoning regulations. A variance extends authorization to the owner to use his property in a manner forbidden by the zoning enactment; it presupposes the reasonableness of zoning regulations as a whole, and relaxes the general rules of the ordinance to alleviate conditions peculiar to particular property. A variance permits a use to which the property is adapted and avoids an undue invasion

4. *Walton v. Donnelly*, 83 Okl. 233, 201 P. 367 (1921); *Board of Commissioners of Kingfisher County v. Grimes*, 75 Okl. 219, 182 P. 897 (1919).

5. *Oklahoma City v. Harris*, 191 Okl. 125, 126 P.2d 988 (1942) that under § 407 Boards of Adjustment are empowered in proper cases to make adjustments and create variances to the ordinances to prevent unnecessary hardships, and that the power and authority of the Board to determine the question of a right to variance was not a delegation of legislative authority but that the Board performed in a quasi-judicial functional capacity.

of the right of private property by compelling conformance to unsuitable permissible use thereby causing a burden on individual landowners that is disproportionate to common need.[6]

■ The right, power, and authority of the legislative body of cities to enact zoning ordinances arises from the authority of the Oklahoma Statutes.[7] Because the inevitable effect of zoning ordinances is to limit private rights in the interest of public welfare, the exercise of municipal zoning power must be carefully guarded and permitted only when circumstances and conditions disclose the need for this proper exercise of police power. Municipal power to interfere by zoning with the general rights of the landowners is not unlimited, and a restriction by the character of use cannot be imposed if it does not bear substantial relation to public health, safety, morals or general welfare.[8] Where a zoning ordinance exceeds the powers delegated by statute, any attempt to prescribe a meaning for statutory terms and limitations different from those intended by the legislature, or to attempt by ordinance to extend their meaning is an excessive use of power and renders the ordinance invalid and void.[9]

AFFIRMED.

**6.** *Moriarty v. Pozner,* 21 N.J. 199, 121 A.2d 527 (1956); 2 Anderson "American Law of Zoning," p. 593 (1968); 101 C.J.S. Zoning § 173 (1958).

**7.** 11 O.S.1971 § 401; *Makrauer v. Board of Adjustment of City of Tulsa,* 200 Okl. 285, 193 P.2d 291 (1948); *Oklahoma City v. Barclay,* 359 P.2d 237 (Okl.1961).

5 McMillin on Municipal Corporations § 15.21: "At the risk of being struck down as invalid, all ordinances must in general conform and not be inconsistent with the public policy of the state, as found in its constitution and statutes or, when the constitution and statutes are silent, in its judicial decisions in the constant practice of its public officials. The rule requires at least substantial conformity, and under it an ordinance cannot prohibit what the public policy permits, or permit that which the public forbids. Nor, under a general grant of power, can a municipal corporation adopt ordinances which infringe the spirit, or are repugnant to the policy, of the state as declared in its legislation. It follows that if the state has expressed in legislation a

WILLIAMS, C. J., and DAVISON, IRWIN, BERRY, LAVENDER, SIMMS and DOOLIN, JJ., concur.

BARNES, J., dissents.

public policy with reference to a subject, a municipality cannot ordain an effect contrary to or in qualification of the public policy so established, unless there is a specific, positive, lawful grant of power by the state to the municipality to so ordain.

"An ordinance cannot abridge the exercise of the police power of the state. As the municipal corporation cannot legislate regarding any subject matter unless so authorized by the state, so is the corporation power less to extend a wider scope of its powers and, by the arbitrary and unauthorized definition of words or terms, include more than what is intended by the legislature."

**8.** *City of Tulsa v. Swanson,* 366 P.2d 629 (Okl. 1961); *Motor Lodges, Inc. v. Willingham,* 509 P.2d 901 (Okl.1972).

**9.** *7-Eleven, Inc. v. McClain,* 422 P.2d 455 (Okl. 1967) citing *Ex parte Higgs,* 97 Okl.Cr. 338, 263 P.2d 752 (1953).